UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

AT LAW AND IN ADMIRALTY

IRIS NATHANS,

    Plaintiff

v.

CARNIVAL CORPORATION
d/b/a CARNIVAL CRUISE LINE

    Defendant.

_____/

**COMPLAINT FOR DAMAGES**

    The Plaintiff, IRIS NATHANS, hereby sues the Defendant and files this Complaint for Damages and says:

**THE PARTIES AND JURISDICTION**

1. This is an action for damages that exceed $75,000 exclusive of interest, costs, and attorney's fees.

2. **THE PLAINTIFF.** The Plaintiff, IRIS NATHANS, is sui juris and is a resident of Bluffton, South Carolina.

3. **THE DEFENDANT**. The Defendant, CARNIVAL CORPORATION d/b/a CARNIVAL CRUISE LINE (hereinafter referred to as CARNIVAL or Defendant or the cruise line), is incorporated outside of the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto, the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

1

4. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendant, at all times material hereto, itself or through an agent or representative, in the County and in the District in which this Complaint is filed:

> (a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and or
>
> (b) Had an office or agency in this state and/or county; and/or
>
> (c) Engaged in substantial activity within this state; and/or
>
> (d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

7. **DATE OF THE INCIDENT**. The incident occurred on November 30, 2016.

8. **LOCATION OF THE INCIDENT.** The incident occurred onboard the vessel CARNIVAL *Pride*, a ship in navigable water while the Plaintiff was a passenger onboard. Accordingly, the Plaintiff's claims are governed by the general maritime law. Specifically, the Plaintiff's incident occurred on the Lido Deck near the Apollo forward pool.

9. **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.** At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

10. **DESCRIPTION OF THE INCIDENT.** The Carnival *Pride* is a cruise ship which was custom built to the specifications of Carnival and first was christened on January 7, 2002. The *Pride* has a capacity for 2,124 passengers. Like all of the Carnival Cruise Line ships, the *Pride* has a Lido Deck, on deck 9. The Lido Deck is an open deck and is one of the upper most decks on the ship. A large portion of the Lido Deck is open air and has swimming pools and other amenities like restaurants. The *Pride* has two swimming pools on the Lido Deck. Carnival has also placed chaise lounge chairs, couches, and tables and chairs for its passengers to use when they finish swimming in the pools. The passengers also apply sun screens, suntan oils, and suntan lotion while they are using the pools and chaise lounges on the Lido Deck. These sunbathers sweat and get into the pool. When the passengers get out of the pool water drips off of them and onto the deck carrying the oils, lotion, and sweat onto the deck along with pool water. Carnival knows that the wet passengers also track large amounts of water on Deck 9 when they are on the way their way to the chaise lounges. This water and the accumulation of oils, lotions and sweat causes the deck to be extremely slippery when wet. This is an ongoing, continuous problem of which Carnival is well aware.

11. On all or most of the cruise ships that Carnival operates, Carnival has installed and has maintained over the years a flooring that is believed to be resin. Carnival knows the properties in these floors and knows that they are extremely slippery when wet and if not maintained properly these decks are even more slippery. Carnival knows that it is extremely important to mop, clean, dry, and otherwise maintain the outside decks, especially Deck 9, in a safe condition due to the significant amount of traffic of wet passengers and its close proximity to the pools. Carnival also knows it must inspect the outside decks on a regular basis looking for water.

12. Carnival has notice of these repetitive, ongoing conditions and problems. For this reason, Carnival's duty of care under the circumstances includes the duty to inspect for spills and accumulations of water and oils and lotions, to clean and dry the areas, to warn about the areas with signs and personnel posted, and to prevent passengers from accessing the areas with the spills and other materials on the flooring by cordoning or blocking off the areas.

13. On November 30, 2016, Carnival allowed and did not clean or warn about pool water that contained sunscreen, oils and lotions on Deck 9 near the Apollo forward pool. Carnival failed to keep clean and dry an area of water that was approximately six feet by four feet in diameter on Deck 9, near the Apollo forward pool. The cruise line personnel failed to dry the deck with towels, floor fans, squeegees or some other means and did not cordon off the area to prevent passengers from walking there. Carnival also did not post signs or otherwise warn its passengers that Deck 9, near the Apollo forward pool, contained a large area of water that was approximately six feet by four feet in diameter, and of the slippery nature of the floor. Carnival allowed a large amount of water to accumulate near the Apollo forward pool for an extended period of time. The cruise line allowed this area to stay wet and slippery over an extended period of time without using warning signs, without drying or mopping the area, without blocking off or cordoning the area off, and without otherwise preventing foot traffic, or drying off the floors to ensure they were safe for

traffic. Carnival had knowledge that accumulations of water near the Apollo forward pool is a recurrent and repetitive problem. Carnival failed to maintain this area reasonably under the circumstances and is guilty of negligent maintenance and a negligent mode of operation because it knew about this recurrent problem and failed to address it on this day. Carnival also had at least constructive notice and knowledge about this particular accumulation of water given the extensive size of the area of water. Carnival also did not maintain the deck properly so as to reduce the slipperiness of the deck floor. Further, the cruise line did not add or change out the floors to add aggregate or other surface additions to make the floor less slippery.

14. As a result of this oily deck from the bathers, when passenger Iris Nathans was walking on Deck 9, near the Apollo forward pool, she slipped and fell in a large area of water that was approximately six feet by four feet in diameter. The fall caused Ms. Nathans to shatter the femur in her right leg, causing severe, permanent and debilitating injuries. The injury was so bad that it required surgery and the insertion of hardware. These injuries are permanent and significantly affect the life and abilities of Ms. Nathans.

## COUNT I: NEGLIGENCE

15. The Plaintiff, IRIS NATHANS, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 14, above.

16. **DUTIES OWED BY THE DEFENDANT**. The Defendant owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. See, *Hall vs. Royal Caribbean Cruises, Limited*, 888 So. 2d 654 (Fla. 3d DCA 2004), 2004 A.M.C. 1913; citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed. 2d 550 (1959); *The Moses Taylor*, 4 Wall 411, 71 U.S. 411, 18 L. Ed. 397 (1866); *Carlisle v. Ulysses Line Ltd.*, 475 So. 2d 248 (Fla. 3d DCA 1985). The Defendant also owed a "duty to exercise reasonable care under the circumstances". See, *Harnesk vs. Carnival Cruise Lines, Inc*, 1992 AMC 1472, 1991 WL

329584 (S. D. Fla. 1991). The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to, or may reasonably be expected to visit." See, *Carlisle vs. Ulysses Line Limited*, *S.A*., 475 So. 2d 248 (Fla. 3d DCA 1985). *Vierling v. Celebrity Cruises*, 339 F. 3d 1309, 1319-20 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is nondelegable, and that even the 'slightest negligence' renders a carrier liable). The cruise line has a duty to provide safe ingress and egress to and from the ship. *Tittle v. Aldacosta*, 544 F. 2d 752 (5th Cir. 1977); *Bellocchio v. Italia Flotte* 84 F. 2d 975 (2d Cir. 1936); *Samuelov v. Carnival,* 870 So. 2d 853 (Fla. 3d DCA 2004); and *Chan v. Society Expeditions*, 123 F. 3d 1287 (9th Cir. 1997). More specifically "a high degree of care is demanded of common carriers towards their passengers," including the "duty to maintain reasonable, safe means for passengers to board and disembark." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309, 1319 (11th Cir. 2003). This duty is non-delegable and "even the slightest negligence renders a carrier liable." *McLean v. Carnival Corporation,* 2013 WL 1024257 (S.D. Fla.), citing *Vierling v. Celebrity Cruises, Inc*., 339 F. 3d 1309, 1319 (11th Cir. 2003).

17. Carnival breached those duties and was negligent by failing to keep the floor clean and dry to allow normal and safe foot traffic; failing to warn that the floor was slippery when wet; failing to inspect for and to observe any clear water, oils, grease or other foreign substances from the flooring; failing to provide a mat or other floor covering over the slippery floor to allow people wo traverse the floor area to use that section of the floor; failing to properly and reasonably train its employees in the proper methods of monitoring the activities of the people in the area, cleaning and drying of the flooring, posting warning notices, and cordoning or blocking off the area; failing to properly and reasonably and safely prevent dangerous conditions such as the one in this case;

allowing an ongoing, recurring, continuous and/or repetitive problem to occur or to remain on the premises which would cause accidents or injuries; providing negligent maintenance to the area or to the premises; failing to otherwise maintain the area and the premises in a safe and reasonable manner; designing and building and not changing or adding slip resistant materials to the deck which allowed substances and water to accumulate in an area for an unreasonable amount of time, and prevent the floor from being slip resistant; allowing substances and water to accumulate on decks; failing to comply with applicable standards, statutes, and/or regulations the violation of which is negligence per se and/or evidence of negligence; failing to implement a method of operation which was reasonable and safe and would prevent dangerous conditions such as the one this case; and failure to comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

18. The Defendant created a dangerous slippery condition on the subject ship and allowed the dangerous condition to exist thereby causing an accident on the date referenced above in which the Plaintiff was severely injured.

19. Carnival either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

20. Carnival had constructive knowledge of the dangerous condition by, *inter alia*, (a) the length of time the dangerous condition existed on the deck; (b) the nature of the dangerous condition, including that the condition existed on Deck 9 near the Apollo forward pool and was apparent to any Carnival employee passing by; and/or (c) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity. Thus, the dangerous condition was

reasonably foreseeable and in the exercise of reasonable care the Defendant should have known about it.

21. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent maintenance; and/or (b) engaged in and was guilty for negligent methods of operations.  Therefore, no notice to the Defendant is required.

22. The negligent condition was created by the Defendant; and was known to the Defendant; and had existed for a sufficient length of time so that Defendant should have known of it; and was a continuous or repetitive problem thus giving notice to the Defendant.

23. The negligent condition occurred with sufficient regularity so as to be foreseeable by the Defendant, and should have been foreseeable by the Defendant.

24. The Defendant's negligence proximately caused the permanent injuries and damages to the Plaintiff in the past and in the future.  Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; lost income in the past; and lost income and income earning capacity in the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past, and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in

the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By: *s/ John H. Hickey* \_\_\_\_\_
    **JOHN H. HICKEY**, **ESQ.** (FBN 305081)
    hickey@hickeylawfirm.com
    federalcourtfilings@hickeylawfirm.com
    **HICKEY LAW FIRM, P.A.**
    1401 Brickell Avenue, Ste. 510
    Miami, Florida 33131-3504
    Telephone: (305) 371-8000
    Facsimile: (305) 371-3542
    *Attorney for the Plaintiff*